## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

**ACE AMERICAN INSURANCE COMPANY,** as subrogee of Sun Capital Partners, Inc./Indalex, Inc.,

      Plaintiff

   v.

**WENDT, LLP,**

      Defendant.

No. 10 C 1668

## MEMORANDUM OPINION AND ORDER

Before me is defendant Wendt LLP's motion to dismiss the case for lack of personal jurisdiction, or, in the alternative, to transfer the case to the Northern District of Indiana. There appears to be no dispute that but for a contract for services between defendant and a company called Indalex (of whose corporate parent plaintiff asserts it is the insurer), I would have no personal jurisdiction over defendant. Personal jurisdiction may be waived by contract, however, *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1280 (7th Cir. 1997), and plaintiff claims that defendant did so here. Resolution of defendant's motion thus requires me to interpret the asserted contract to determine whether I agree.

Three documents are at issue. The first is a three-page document bearing the header "revised quote," which is written on defendant's letterhead and dated October 2, 2007. The subject of

the document is "Proposal # 13830 Revised."  The substantive portion of the document opens with the words:  "**ACCEPTANCE** (last page) of this quote must be signed and faxed back along with a Purchase Order, prior to scheduling of Project."  (Original typeface)  The document goes on to describe the project -- "to furnish labor and equipment for the installation of one (1) UBE 6000 Ton Extrusion Press at plant site in Connorsville, IN" -- then sets forth two alternative proposals.  "Option 1" proposes a six-man crew working ten hour days for twenty-one days at a certain cost. "Option 2" proposes two six-man crews working two ten hour shifts for twelve days at a different cost.  The proposal states that the work "will be based on the following terms and conditions," then sets forth about a page of terms allocating responsibility for maintaining the project site, establishing who bears the cost of changes in the project scope or working conditions, and the like.  None of the terms relates to forum selection.  The proposal closes with the words "**PLEASE SIGN AND FAX BACK TO** [number]" (original typeface), and includes lines for a printed name, title, signature and date.[1]  There is no dispute that Indalex never signed this document or provided the names or contact numbers for personnel authorized to change or amend the scope of work.

---

[1]There is some additional text after the signature line, but it is not relevant to the issues presented here.

Indalex did, however, issue Purchase Order No. 839417 on October 15, 2007, which is the second document I must consider. This document consists of two pages, and roughly half of each page is devoted to a table with several columns for information about the item purchased. In the table on page 1, the column identifying the item purchased reads, "PRESS INSTALLATION OPTION 1 AS QUOTED ON 13830 REVISED. TOO INCLUDE INSTALLATION AND UNLOADING." The table on page 1 also includes seven partial lines of text with information about delivery and payment terms, while the table on page 2 contains nothing more than the words "goods total," (followed by a number), "order total," (followed by the same number), and the text "End of Purchase Order: 835417." At the bottom of each page are ten additional lines of text, separated into three distinct fields, with text in small but legible print. The text in the middle field states, "This order subject to the terms and conditions as set forth on the website www.Indalex.com." It is fair to say, in case it is not evident from the foregoing description, that the two-page purchase order includes relatively little actual text.

The Indalex website--the third document relevant to my analysis--contains a page entitled "Indalex's General Purchase Order Terms and Conditions." A printout of the relevant web page is three pages in length (although each page contains only one column of text, which takes up only the right half of the page) and

includes thirteen numbered paragraphs.  Paragraph 13 is entitled, "**APPLICABLE LAW AND LANGUAGE; VENUE; OBJECTION TO OTHER TERMS**." (Original typeface)  This paragraph includes the sentence, "Any action arising out of an order made by Indalex in the United States may be brought in any federal or state court located in Illinois having jurisdiction of the subject matter, and Seller consents to such court's personal jurisdiction over Seller and waives any objection that such court is an inconvenient forum."

The complaint asserts that an enforceable contract was formed on April 3, 2008, when defendant manifested its acceptance of Purchase Order 835417 by beginning work on the project.  Defendant, however, insists that its proposal, "Proposal # 13830 Revised," constituted the operative offer in its agreement with Indalex, and that a binding contract was formed when Indalex accepted the offer "wholesale" by issuing Purchase Order 839417.  Defendant further argues that because the terms set forth on Indalex's website materially differ from the terms of the offer, and because the reference to the internet terms were like a "needle in the haystack" of Indalex's purchase order, defendant cannot be deemed to have consented to those terms, which are thus outside the scope of the contracting parties' agreement.

Plaintiff responds that defendant's proposal was merely an invitation to deal; that its purchase order is properly construed as the operative offer; that the terms set forth on Indalex's

-4-

website were appropriately incorporated by reference in the offer; and that defendant accepted its offer by beginning work.

"The general rule is that price quotations are not offers, but rather are mere invitations to enter into negotiations or to submit offers." *Rush-Presbyterian-St. Luke's Medical Center v. Gould*, Inc., No. 93 C 1661, 1995 WL 340967 (N.D. Ill. 2003) (Manning, J.). It is true, however, that a price quotation that is "sufficiently detailed" may constitute an offer. *McCarty v. Verson Allstate Press Co.*, 89 Ill.App.3d 498, 411 N.E.2d 936, 942 (1980). Although defendant articulates no framework for evaluating whether its proposal meets this standard, it is clear that "Proposal # 13830 Revised" contains more than a mere price quote and includes more than insignificant detail about the terms of the project. Moreover, the fact that defendant prominently identified a specific mode of acceptance (in bold, capitalized text in the first line of the proposal) suggests that it indeed intended to create a legally operative offer, i.e., to grant Indalex the power of acceptance, thereby creating a binding contract. *See id.* ("[A]n offer is an act on the part of one person whereby he gives to another the legal power of creating the obligation called contract.")

Even if I assume that Proposal # 13830 Revised constituted an offer, however, Purchase Order No. 839417 cannot properly be deemed a "wholesale" acceptance of that offer. To begin with, Indalex failed to follow the proposal's express terms of acceptance:

signature of the proposal's last page.  In addition, Indalex's purchase order clearly stated that the order was governed by the terms and conditions on Indalex's website.  Although the text referring the website was not prominent, it was not illegible, nor can it be characterized as "hidden" within a dense forest of text.  Having first failed to accept defendant's offer in the manner defendant provided, and having further advised defendant that the purchase order was subject to Indalex's own terms and conditions, Indalex cannot reasonably be deemed to have accepted defendant's offer "wholesale" merely by identifying the item for purchase as "Option 1 as quoted on 13830 revised," as defendant contends.  That text is better understood as specifying which of the two alternatives proposed by defendant Indalex was electing to purchase.  This interpretation is reinforced by the referenced terms on Indalex's website, which provide that "[n]o modification or addition to the written terms hereof shall be effected by Buyer's acknowledgment or acceptance of any quotation, price list, acknowledgment or other form submitted by Seller containing other or different terms or conditions, to which notice of objection is hereby given."  Because "no contract can be found where the offeror could not reasonably treat the response of the offeree as an acceptance," *McCarty*, 411 N.E.2d at 944-45, no contract was formed when Indalex sent defendant its purchase order.

Instead, a contract was formed when defendant accepted

Indalex's counter-offer (assuming again that defendant's proposal was indeed an offer) by beginning work on the project. "If the offer does not specify a particular mode of acceptance, the offer may be accepted by a performance of the desired acts." *Yoder v. Rock Island Bank*, 47 Ill.App.3d 486, 489, 362 N.E.2d 68 (Ill. App. Ct. 1977). The contract so formed included the terms and conditions incorporated by reference in the purchase order. *See Lease Management Equipment Corp. v. DFO Partnership*, 392 Ill.App.3d 678, 910 N.E.2d 709, 715 (Ill. App. Ct.. 2009) ("Where a contract incorporates another document by reference, its terms become part of the contract"). These terms contained provisions by which the parties to the contract unambiguously agreed that state and federal courts in Illinois were a proper (though not an exclusive) venue and expressly consented to personal jurisdiction in Illinois.

Forum selection clauses are presumed valid and are enforceable unless they are subject to "the sorts of infirmity, such as fraud and mistake, that justify a court's refusing to enforce a contract." *IFC Credit Corp. v. Aliano Bros. General Contractors, Inc.*, 437 F.3d 606, 610 (7th Cir. 2006)(quoting *Northwestern Nat. Ins. Co. v. Donovan*, 916 F.2d 372, 375 (7th Cir. 1990). Thus, defendant can escape the conclusion that it consented to personal jurisdiction and venue in Illinois only if it can demonstrate that the forum selection clause is unenforceable. Defendant argues that it lacked reasonable notice of the forum selection provision; but

it is presumed to know the contents of contracts to which it has agreed, see *Paper Express, Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir. 1992), and, as noted above, the purchase order's reference to the terms on Indalex's website was neither illegible nor so buried in the text as to give rise to any inference of fraud that would render the terms unenforceable. In short, I conclude that defendant has, indeed, waived its objections to personal jurisdiction and venue.

Finally, in the alternative to its argument that venue is not proper in this court, defendant urges me to transfer the case to the Northern District of Indiana pursuant to 28 U.S.C. § 1404(a). That statute provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The Supreme Court has held, however, that "[t]he presence of a forum-selection clause...will be a significant factor that figures centrally in the district court's calculus" in determining whether to transfer venue under § 1404(a). *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). The countervailing factors defendant cites here – primarily the convenience of witnesses and of defendant - are not sufficient to outweigh the significance of a valid forum selection clause.

Two final issues merit brief comment. First, defendant points out that the forum selection clause is permissive rather than

-8-

mandatory.  This appears to be true (or at least, plaintiff agrees with the point), but it does not help defendant's cause.  The issue is not whether plaintiff could legitimately have filed suit elsewhere than in Illinois (presumably it could not have if the provision were mandatory), but rather whether the defendant agreed that venue would be proper in any suit brought in Illinois.  It did.  Second, in what appears to be the skeleton of a standing argument, defendant complains that plaintiff has not explained its status as a third-party beneficiary to the contract at issue.  On its face, however, the complaint states that plaintiff was the insurer of the company that owned Indalex.  A reasonable interpretation of this allegation is that plaintiff suffered losses as a result of defendant's alleged breach of its contract with Indalex, and thus has an interest in enforcing the contract. Defendant's suggestion that plaintiff is not entitled to bring suit does not adequately articulate a basis for the relief it seeks.

For the foregoing reasons, defendant's motion is denied.

**ENTER ORDER:**

_____

**Elaine E. Bucklo**
United States District Judge

Dated: June_28_, 2010